FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2017 APR 21 A 11: 56
CLERK'S OFFICE
AT GREENBELT
BY____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

DENNIS HILL,

    Plaintiff,

v.

SUSAN K. MALAGORI, et al.,

    Defendants.

Case No.: GJH-16-3905

## MEMORANDUM OPINION

Pending before the Court is Plaintiff Dennis Hill's Complaint seeking injunctive relief against certain employees of the Montgomery County Correctional Facility. ECF No. 1. The Office of the Montgomery County Attorney has filed a Court-directed response, which has been supplemented. ECF Nos. 4 & 7. Plaintiff has replied. ECF Nos. 5 & 6. These issues have been fully briefed and a hearing is unnecessary. Loc. R. 105.6 (D. Md. 2016). For the reasons that follow, Plaintiff's request for injunctive relief shall be denied and the Complaint dismissed without prejudice.

**I.    BACKGROUND**

Plaintiff, a pretrial detainee then confined at the Montgomery County Correctional Facility ("MCCF"), filed correspondence with the Court which was construed as a civil rights complaint against Susan K. Malagori, Warden of MCCF, Dr. Howell, and Anthony Sturgis, Medical Director of MCCF. ECF No. 1. Plaintiff alleges that he is suffering from a "critical, life-threatening medical condition." ECF No. 1 at 1. He indicates that prior to his incarceration he consulted with a cardio-thoracic surgeon who indicated he required immediate surgery or he

1

would die. *Id.* Plaintiff alleges that Defendants failed to move forward with treatment of his condition but rather told him to "wait and see what happens." *Id.*

By way of Affidavit, Plaintiff indicates that on October 19, 2016, he was taken to the Washington Adventist Hospital (WAH) for examination and diagnostic testing. ECF No. 3 at 1. The testing was done by Dr. Ali, who admitted Plaintiff to the hospital immediately due to the "extensive, critical and life threatening damage, revealed by the procedure." *Id.* at 1-2. Dr. Ali, and Dr. Ijaz, consultants for MCCF, also consulted with Dr. Kathleen Petro, a cardiovascular surgeon. *Id.* at 2. The doctors described the severity of Plaintiff's condition and provided a treatment plan. *Id.* Plaintiff indicates that the doctors agreed that the damage was "critical, life-threatening, and should be treated by surgery immediately." *Id.* Plaintiff also notes that Dr. Petro indicated that the facilities at WAH were inadequate. *Id.* Dr. Petro recommended that the surgery take place at INOVA Fairfax Hospital in Virginia, where the proper team and facilities were available. *Id.* at 3. Dr. Petro offered to begin the process to have Plaintiff transported to INOVA Fairfax. *Id.* Plaintiff states that Dr. Petro stressed that the treatment and surgery were critical and time-sensitive, and that prolonging the decision-making process would compound the damage. *Id.*

Plaintiff states that Defendants refused to transport him out of state for treatment. *Id.* at 4. Plaintiff states that later that day he suffered another heart attack. *Id.* He was transferred to Prince George's Medical Center, where he was kept for observation for three weeks. *Id.* However, Plaintiff indicates that he received no corrective treatment for his blocked arteries and veins or for the tear in the "valve." *Id.* Plaintiff states that Defendants do not plan to seek any treatment or surgery for him, indicating instead that they intend to "wait and see what happens." *Id.* at 5.

In their response to the request for emergency injunctive relief, counsel for the MCCF indicates that on August 19, 2016, Plaintiff was initially processed at the Montgomery County Detention Center. ECF No. 4-1 ¶ 4. During his initial medical screening, Plaintiff reported a history of several medical diagnoses and indicated that he was recently hospitalized for a defibrillator and pace maker implantation. *Id.* ¶ 5; ECF No. 4-2 at 3. Medical staff obtained documentation from Anne Arundel Medical Center indicating Plaintiff suffers from: 1) coronary artery disease; 2) chest pain; 3) chronic systolic congestive heart failure; 4) essential hypertension; 5) history of DVT; and 6) Type II diabetes mellitus. ECF No. 4-2 at 6.[1]

On August 22, 2016, Plaintiff was transferred to MCCF to be housed on the specialized medical unit. ECF No. 4-1 ¶ 6. Plaintiff was evaluated by Dr. Robert Younes on September 7, 2016, due to complaints of chest pain. *Id.* Dr. Younes ordered an expedited cardiology consult. *Id.*

Plaintiff was seen by Dr. Mohsin Ijaz, a cardiologist, on September 12, 2016. *Id.* ¶ 7; ECF No. 4-3 at 4. Dr. Ijaz recommended medication changes, lab tests, a stress test, and a defibrillator evaluation. ECF No. 4-1 ¶ 7; ECF No. 4-3 at 4. Dr. Ijaz also recommended that Plaintiff follow up with him in 1-2 weeks. ECF No. 4-1 ¶ 7; ECF No. 4-3 at 4.

Plaintiff was evaluated by Dr. Younes on September 19, 2016, after which Dr. Younes recommended Plaintiff be transported to Holy Cross Germantown Hospital. ECF No. 4 at 3; ECF No. 4-1 ¶ 7. Plaintiff remained at the hospital until September 22, 2016. ECF No. 4-1 ¶ 7.

On September 27, 2016, Plaintiff was again evaluated by Dr. Ijaz and underwent a stress test evaluation without complications. ECF No. 4-1 ¶ 7; ECF No. 4-3 at 3. Dr. Ijaz saw Plaintiff again on October 4, 2016, and recommended that a cardiac catheterization be scheduled within

---

[1] Defendant also mentions that Plaintiff suffers from syncope, more commonly referred to as fainting, but the Court did not see that specific ailment referenced in the records from Anne Arundel Medical Center.

1-2 weeks. ECF No. 4-1 ¶ 7; ECF No. 4-3 at 4.

On October 20, 2016, Plaintiff was sent to WAH for the cardiac catheterization procedure. ECF No. 4-1 ¶ 8; ECF No. 4-4. The catheterization was performed by Dr. Ali. ECF No. 4-1 ¶ 8; ECF No. 4-4. Dr. Ali recommended Plaintiff be referred for coronary artery bypass graphing (CABG) and mitral valve annuloplasty (MVA). ECF No. 4-1 ¶ 8; ECF No. 4-4 at 1. Plaintiff was subsequently evaluated by Dr. Kathleen Petro, who indicated that due to Plaintiff's high risk status, the surgery could not be performed at WAH. ECF No. 4-1 ¶ 8; ECF No. 4-5 at 2.

Plaintiff was transferred to Prince George's County Hospital on October 21, 2016, to be evaluated by Dr. James Brown, a cardiothoracic surgeon. ECF No. 4-1 ¶ 8; ECF No. 4-5 at 1. Plaintiff remained at Prince George's County Hospital until November 10, 2016. ECF No. 4-1 ¶ 8; ECF No. 4-5 at 1.

On November 8, 2016, Plaintiff was sent to the University of Maryland Hospital for a viability study. ECF No. 4-1 ¶ 8; ECF No. 4-5 at 10-12; ECF 4-6 at 15. The results of the study were discussed among the physicians, including Dr. Brown, who determined Plaintiff was not a candidate for DABG/MVA. ECF No. 4-1 ¶ 8; ECF No. 4-5 at 13. Dr. Brown determined that Plaintiff was not a viable candidate for surgical revascularization because the targets of the area of the viable tissue were not suitable and therefore not operable. ECF No. 4-1 ¶ 8.

On November 19, 2016, Plaintiff was transported to Shady Grove Medial Center due to complaints of chest pain. ECF No. 4-1 ¶ 9. He returned to MCCF the following day. *Id.*

On November 25, 2016, he was transported to Holy Cross Germantown Hospital. ECF No. 4-1 ¶ 10. Doctors again consulted with Dr. Brown to determine why he was not a candidate for surgical revascularization, and staff at Holy Cross Germantown Hospital confirmed Dr. Brown's opinion that Plaintiff was not a good candidate for the procedure. ECF No. 4-1 ¶ 10;

4

ECF No. 4-6 at 15. Plaintiff remained at the hospital until November 28, 2016. ECF No. 4-1 ¶ 10.

On November 29, 2016, Plaintiff was provided a second opinion by Dr. Paul Massimiano, regarding the viability of the surgery. ECF No. 4-1 ¶ 11; ECF No. 4-3 at 6. Dr. Massimiano determined that Plaintiff was "not a candidate for surgery after reviewing records." ECF No. 4-1 ¶ 11; ECF No. 4-3 at 6.

While housed at MCCF, Plaintiff continued to be regularly monitored and evaluated by MCCF medical staff as well as outside specialists. ECF No. 4-1 ¶ 12; ECF No. 4-3 at 7-8. On December 7, 2016, Plaintiff was evaluated by Dr. Ijaz, who adjusted his medication. ECF No. 4-1 ¶ 12; ECF No. 4-3 at 7.

On December 29, 2016, Dr. Ijaz again examined Plaintiff and noted that he was currently stable, although he complained of recurrent episodes of chest discomfort. ECF No. 4-1 ¶ 13. Dr. Ijaz noted that Plaintiff was refused for surgical intervention after evaluation at the University of Maryland and WAH. *Id.* Dr. Ijaz noted he would continue to explore alternative options for Plaintiff. *Id.*

On February 1, 2017, Plaintiff appeared before the Honorable Judge Rick Johnson, Circuit Court for Montgomery County, relative to his criminal proceedings. ECF No. 7-1. At that time, Plaintiff indicated that he had attended surgical consultations and had, to date, been denied surgery because of his high-risk status. *Id.* at 4-5. He also offered that he was awaiting a surgical consultation at Johns Hopkins. *Id.* Further, Plaintiff's counsel articulated that Plaintiff would prefer to stay in custody rather than be released, so that his medical care could continue consistently. *Id.* at 5, 7. Plaintiff was released from confinement at MCCF and transferred to the Baltimore County Jail based upon a detainer lodged by Baltimore County. *Id.* at 22.

## II. DISCUSSION

Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). A case becomes moot when the issues presented are "no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (citing *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). For a declaratory judgment to issue, there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 242 (1937); *see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). Where injunctive or declaratory relief is requested in an inmate's complaint, it is possible that events occurring after the filing of the complaint render the matter moot. *See Slade v. Hampton Rd's Reg'l Jail*, 407 F.3d 243, 248-49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *see also Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). Section 1983 actions seeking injunctive and/or declaratory relief have been declared moot when the practices, procedures, or regulations challenged were no longer in use. *See, e.g., Tawwab v. Metz*, 554 F.2d 22, 24 (2d Cir. 1977); *Bradley v. Judges of Superior Court*, 531 F.2d 413, 417 (9th Cir. 1976); *Uzzell v. Friday*, 401 F. Supp. 775, 779 (M.D.N.C. 1975), *aff'd in pertinent part*, 547 F.2d 801 (4th Cir. 1977);

*Rappaport v. Little League Baseball, Inc.*, 65 F.R.D. 545, 547-49 (D. Del. 1975); *Locke v. Bd. of Pub. Instruction*, 499 F.2d 359 (5th Cir. 1974); *Wilkinson v. Skinner*, 462 F.2d 670 (2d Cir. 1972).

Plaintiff's request for injunctive relief is moot because he is no longer in custody at MCCF and he does not fall into the exception under the "capable of repetition, yet evading review doctrine" because there is no reasonable expectation that he will return to MCCF. *See Slade*, 407 F.3d at 249 ("Because we presume that [plaintiff] will abide by the criminal laws of [the state] in the future, we do not believe there is a reasonable probability that he will return to the [correctional facility].")

### III. CONCLUSION

For the foregoing reasons, Plaintiff's request for injunctive relief shall be denied and the Complaint shall be dismissed without prejudice. A separate Order follows.

Dated: April 2/2017

GEORGE J. HAZEL
United States District Judge